**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Bivins, | No. CV-24-02052-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Pharmaceutical Research Associates Incorporated, | |
| Defendant. | |

Before the Court is Defendant Pharmaceutical Research Associates Incorporated's ("Defendant") Motion to Dismiss for failure to state a claim. (Doc. 13). Plaintiff Joseph Bivins ("Plaintiff") filed a Response (Doc. 19), and Defendant then filed a Reply. (Doc. 23). After consideration of the pleadings and the relevant law, the Court finds that oral argument is not necessary. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument.") For the reasons set out below, the Court will grant Defendant's Motion to Dismiss Plaintiff's claims of fair dealing and good faith and deny it for all other claims.

**I.   Background**

Plaintiff was hired by Defendant in August of 2019 to work as a Senior Director. (Doc. 11 at ¶ 7). He worked in the Symphony Health Division and was responsible for selling data, analytics, and technology solutions to healthcare industry providers and manufacturers. (Doc. 11 at ¶ 27). On June 1, 2020, Plaintiff and Defendant entered into an Employment and Noncompetition Agreement ("Agreement") that accompanied Plaintiff being promoted to Vice President of Sales. (*Id.* at ¶ 28). Part of the Agreement

included an Incentive Commission Plan ("IC Plan") that outlined Plaintiff's commission structure. (*Id.* at 30). Along with a base salary, Plaintiff would receive commissions computed on a quarterly basis. (*Id.*) Many of these commission were "deferred" commissions, meaning that if the services were paid for by clients over time, the commissions were paid out to salespeople once Defendant itself had been paid by the clients. (Doc. 11 at ¶ 34). In August of 2022, Plaintiff was once again promoted—this time to Senior Vice President —a role that required him to oversee sales nationally. (*Id.* at ¶ 37–38). The National Sales position came with it its own IC Plan. (*Id.* at ¶ 41). Under one plan, Plaintiff alleges that Defendant was required to pay him commission for his sales in the West Coast/Mid-West and under the other, his commission for his National sales position. (*Id.* at ¶ 42). So, he was under two separate IC Plans: one for his work in the West Coast/Mid-West and another for his work nationally. (*Id.*) Plaintiff alleges that he was not paid after the end of the fourth quarter of 2022 for his National sales position. (*Id.* at ¶ 43). He also alleges he was not paid commissions for the first and second quarters of 2023. (*Id.* at ¶ 70, ¶ 81). For the first quarter of 2023, he alleges he was not paid under either the West Coast/Mid-West IC Plan or the National plan. (*Id.* at ¶ 64, 70, 81). He alleges the same for the second quarter of 2023. (*Id.* at ¶ 81). He also alleges that he was asked to create an amendment to the IC Plans allowing Defendant to retroactively cancel them, by a Chris Baker ("Baker"). (*Id.* at ¶ 56). Maintaining that he refused to do, he then says he was subjected to a hostile work environment. (*Id.* at ¶ 53). This included being assigned impossible deadlines, being disparaged and name-called in front of his insubordinates. (*Id.*) Another example alleged by Plaintiff includes intimidation with the presence of Human Resources in weekly meetings. (*Id.*) Plaintiff also states that Defendant engaged in active recruitment efforts to replace him while he was still working in his former role. (*Id.* at ¶ 50). He contends he was forced to resign and submitted his written resignation on June 25, 2023, in compliance with a 90-day notice period. (*Id.* at ¶ 78). Defendant terminated him on July 14, 2023, before the 90 days were over[1], which Plaintiff

---

[1] Plaintiff concedes that Defendant was allowed to terminate him before the 90-day period was over according to the Employment Agreement between the two parties. (Doc. 11 at ¶

claims allowed Defendant to withhold base pay from him as well. (*Id.* at 79–80). He now brings the following claims against Defendant: Failure to Pay Wages under A.R.S. § 23-350 et. seq.; Retaliation under the Arizona Employment Protection Act under A.R.S. § 23-1501 et. seq.; Breach of Contract; Unjust Enrichment; and Breach of the Duty of Good Faith and Fair Dealing.

## II.     Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

## III.    Discussion

The Court finds that the IC Plans constitute valid contracts, and the Plaintiff has properly brought a breach of contract claim. Based on these valid contracts between the parties (IC Plans) the Plaintiff has also adequately alleged a violation by Defendant under the Fair Wages Act ("FWA"). For the Arizona Employment Protection Act ("AEPA") claim, Plaintiff has shown that his conduct in acting in the interests of other employees is properly protected by the statute. His unjust enrichment claim will also be allowed to proceed because he has suitably alleged the requirements for such a claim under Arizona law. His good faith and fair dealing claims, however, fail as a matter of law and will be dismissed.

---

80).

- 3 -

### A. The IC Plans as contracts

Defendant argues dismissal is proper on Plaintiff's breach of contract claim because Plaintiff has not made a proper legal argument that the IC Plans constituted valid contracts. (Doc. 23 at 7). Defendant maintains that the IC Plans are not valid contracts of any sort because Defendant held the right to modify and cancel the IC Plans at Defendant's sole discretion. (Doc. 13 at 8). Plaintiff counters by submitting that the IC Plans are a proper contract on which he can rest his breach of contract claim. (Doc. 19 at 13).

"The employment relationship is contractual in nature." A.R.S. § 23-1501(A)(1). Not all handbook terms, like the ICP terms and conditions, create contractual promises. *See Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (Ariz. 1999). Statements are generally only contractual if they disclose "promissory intent" or if the employee "could reasonably conclude" they constituted an employer's commitment. *Shumway v. DHL Express (USA), Inc.*, No. CIV 06-1188-PHX-DKD, 2008 WL 11338792, at *9 (D. Ariz. Sept. 29, 2008). "When an employer promises to pay a commission to find a purchaser, and the employee accepts the offer and performs, both parties are bound and the employer is liable to the employee for any breach of the contract." *Id.* (citing *Mitchell v. Vulture Min. & Mill. Co.*, 55 P.2d 636, 642–43 (Ariz. 1936)).

Although Defendant heavily embraces the discretionary terms of the IC Plans that disclaim the existence of an employment agreement, the Court concludes that Plaintiff has adequately alleged that the IC Plans were a contract. Arizona courts have routinely recognized contracts as valid despite unilateral modification provisions. *See Marciniak*, 2021 WL 1627250, at *4 (citing *Allen D. Shadron, Inc. v. Cole*, 416 P.2d 555 (1966)). There is no legal authority to support the proposition that contracts that allow unilateral modifications are illusory. Additionally, the IC Plans set forth the rules that govern the employment relationship between the parties. (Doc. 13-1 at 1–13). If Plaintiff solicited new business, Plaintiff could earn commissions based on the amount of business brought in. (*Id.*) The detailed terms of the IC Plans betray an understanding between the parties to commit themselves to those terms. *Shumway v. DHL Express (USA), Inc.*, No. CV 06-

1188-PHX-DKD, 2008 WL 11338792, at *10 (D. Ariz. Sept. 29, 2008). Therefore, the Court finds that the IC Plans functioned as valid contracts between the parties. Because the IC Plans are contracts, the Court will also not dismiss Plaintiff's claim for breach of contract.

### B. Commissions as wages under the Fair Wages Act ("FWA")

Defendant also argues that Plaintiff fails to state a claim under the FWA for two reasons: (1) the commission Plaintiff alleges he did not receive was governed by the IC Plans whose terms were discretionary; and (2) deferred compensation such as commissions, are not considered wages under the statute. (Doc. 13 at 4). Plaintiff pushes back by arguing that the FWA that he is not seeking purely deferred wages, as Defendant characterizes, but commissions that he already earned. (Doc. 19 at 4). As to Defendant's second argument that the IC Plans' terms are discretionary, Plaintiff counters that Defendant cannot retroactively change the terms of the IC Plans so that Plaintiff is no longer owed the commissions he already earned. (Doc. 19 at 5). The Court agrees with the Plaintiff on both of his arguments.

Under the FWA "if an employer . . . fails to pay wages due to an employee, the employee may recover in a civil action against an employer . . . an amount that is treble the amount of unpaid wages." Ariz. Rev. Stat. § 23-355(A). Commissions are included under the FWA. Ariz. Rev. Stat. § 23-350(7).

Here, Plaintiff alleges that his earned commissions are wages under the FWA (Doc. 19 at 3). He also posits that Defendant cannot retroactively modify the IC Plans to reconstruct the terms to mean that Plaintiff should not be paid for already earned commissions. (*Id.*) The Court agrees. To start with, commissions are properly considered wages under the Fair Wages Act. *See* Ariz. Rev. Stat. § 23-350(7) (characterizing commissions as wages). That much is clear from the plain text of the statute. Second, Plaintiff contends he was not paid commissions under both the West Coast/Mid-West IC Plan and the National Plan[2]. (Doc. 19 at 9). Plaintiff contends that he worked both sales

---

[2] The two individual IC Plans are attached to Defendant's Motion to Dismiss as the 2023 Commercial Team Incentive Compensation Plan Regional Vice President, Sales and the

- 5 -

positions under his title of Senior Vice President. (Doc. 19 at 9).  Each position, he argues, had its own IC Plan, and he was not paid under either for the first and second quarters of 2023 or the end of the fourth quarter for 2022.  (*Id.*)  Defendant seems to allege, that because it retained the sole and absolute discretion to modify the plan, the Court cannot scrutinize its withholding of Plaintiff's commissions. (Doc. 13 at 6).  Defendant is wrong.  Plaintiff has adequately alleged that he earned those commissions before he resigned based on the terms of the IC Plans.  Defendant is not free to retroactively modify the IC Plans to withhold commissions already earned by the Plaintiff during his employment.  As Plaintiff points out, retroactive modification is not a recognized workaround for a valid contract— which the IC Plan is.  *See Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (1999) (requiring modification of a contract to have mutual assent and consideration, with continued employment not deemed adequate consideration).  So, the Court will deny Defendant's Motion to Dismiss on Count One under A.R.S. § 23-350.

      **C.**     **Constructive Discharge under the Arizona Employment Protection Act ("AEPA")**

Next, Defendant argues that Plaintiff cannot bring a claim under the AEPA for constructive discharge because Plaintiff is limited to only those remedies provided for in the FWA. (Doc. 13 at 6).  According to Defendant, the statutory scheme of the AEPA does not allow Plaintiff double recovery from both the FWA and the AEPA.  (*Id.*) Plaintiff disputes this by stating that his claim under the AEPA, while rooted in the FWA, is not for his own wages, rather it is for the wages of other employees. (Doc. 19 at 9).  This is because the FWA does not provide a remedy for whistleblowing activity on behalf of other employees—something Plaintiff maintains he was doing.  (*Id.*)  He also says that because he is not bringing an AEPA claim for the withholding of his own wages.   (Doc. 19 at 11).  Rather, he is bringing the AEPA claim for his refusal to add an amendment to the IC Plans that would have retroactively canceled commissions for other employees. (*Id.*)  So, he says his claim should be allowed to proceed.

---

2023 Commercial Team Incentive Compensation Plan Vice President of Sales.  (Doc. 13-1 at 1–13).

- 6 -

The Arizona legislature passed the AEPA in 1996, and in doing so, "limited plaintiffs to three avenues of relief for claims asserted against employers on the theory of wrongful discharge." *Cronin v. Sheldon*, 991 P.2d 231, 235 (Ariz. 1999); *see also Hart v. Seven Resorts, Inc.,* 947 P.2d 846, 850 n. 7 (Ariz. App. 1997), *review dismissed,* 955 P.2d 534 (Ariz. 1998) (by enacting the AEPA, the legislature "defin[ed] the public policy of this state and limit[ed] the situations in which an employee may bring a wrongful termination suit"). The statute permits wrongful termination claims when (1) a discharge is in violation of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge is in retaliation for the employee's assertion of certain rights protected by state law. *Id.* When a Plaintiff's claim is based on the third prong, and if the underlying state law provides remedies for the violation, then those remedies are the sole recourse for the Plaintiff. *See* A.R.S § 23-1501(B) ("[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute.") Plaintiff cannot doubly recover under both the underlying state law, and the AEPA. *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2 (D. Ariz. Aug. 21, 2023) (explaining that when an AEPA claim is rooted in the Fair Wages Act for the withholding of wages, the Fair Wages Act provides Plaintiff with the sole remedy: treble damages). Independently, the AEPA allows a claim to proceed when:

> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

A.R.S. § 23-1501(A)(3)(c)(ii).

Defendant attempts to tell this Court that Plaintiff is trying to recover under both the FWA and the AEPA using the same set of foundational facts. (Doc. 23 at 4). Going further, Defendant says this Court already decided this exact issue in *Guernsey*. (*Id.*); *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2 (D. Ariz. Aug. 21, 2023). Defendant is correct that this Court decided in *Guernsey* that if an AEPA claim is embedded in conducted proscribed by the FWA, plaintiffs are limited to the remedies set forth in the FWA. The current case, however, is distinguishable from *Guernsey*. Here, Plaintiff is not trying to recover for his own lost wages under the AEPA, something that can only be remedied by the FWA. Instead, Plaintiff is asserting that he refused to violate the rights of other employees, and engage in illegal conduct, by inserting an amendment into the IC Plans that would allow Defendant to retroactively cancel earned commissions. (Doc. 19 at 9–12).

Multiple times throughout Defendant's briefing, Defendant states that Plaintiff cannot base his AEPA claim for wrongful termination on his FWA claim for lost wages. (Doc. 23 at 3–6). This is correct. And perhaps the reason why Plaintiff does not attempt to do so. What he does argue is that he acted in a way that prevented his *coworkers' wages* from being stolen. (Doc. 23 at 9). Not his *own wages*. The FWA provides no remedy when a plaintiff engages in conduct that he reasonably believes violates the Arizona Constitution or another statute in reference to *other employees*. It is, however, true that the AEPA requires that Plaintiff "point to a predicate Arizona constitutional provision or statute that the employer is violating or will violate." *Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2013 WL 6157858, at *16 (D. Ariz. Nov. 25, 2013) (internal citations omitted). By pointing to the FWA, Plaintiff has done just that. *See Daniels v. Maximus Fed. Servs.*, No. CV-22-01702-SMB, 2024 WL 3758017, at *5 (D. Ariz. Aug. 12, 2024) (characterizing the FWA as a public policy of Arizona). Plaintiff reasonably believed that Defendant would violate the FWA as to other employees. (Doc. 19 at 11). Moreover, the FWA does not provide a remedy when the alleged conduct is based, not on the plaintiff's lost wages, but the possible lost wages of others. *See* A.R.S. § 23-355

(allowing recovery only for plaintiff's own wages).  Plaintiff alleges he was told to make an amendment to the IC Plan to retroactively cancel commissions for other employees. (Doc. 19 at 11); *See Dubey v. Concentric Healthcare Sols. LLC*, No. CV-22-02044-PHX-DJH, 2025 WL 896507, at *17 (D. Ariz. Mar. 24, 2025) (describing the whistleblower protections available to plaintiffs under the AEPA). He refused to make such an amendment, and as a result, he was subject to employment actions that resulted in him being forced to resign. (Doc. 19 at 11).  At this point, he has adequately alleged constructive discharge under the AEPA.  Therefore, Defendant's Motion to Dismiss for constructive discharge under the AEPA is denied.

### D. Good Faith, Fair Dealing, and Unjust Enrichment

Defendant also argues that Plaintiff's claims for good faith, fair dealing, and unjust enrichment should be dismissed.  (Doc. 13 at 7). According to Defendant, Plaintiff can only bring these claims if a contract exists between the parties.  (*Id.*) It is Defendant's contention that it does not because the IC Plans are not contracts.  (*Id.*) In the alternative, Defendant argues that even if the Court were to find that the IC Plans are valid contracts, dismissal is still warranted on Plaintiff's good faith and fair dealing claim because "[T]he breach of an express contractual term is not a proper basis for a good faith and fair dealing claim." (*Id.* at 13).  Plaintiff claims the IC Plans should properly be considered contracts. (Doc. 19 at 13). He also declares that he should be able to proceed under the theories of good faith, fair dealing, and unjust enrichment as alternatives to his breach of contract claim.

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (cleaned up). "[I]mplied terms are as much of a contract as are the express terms." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.' " *Bike Fashion Corp.*, 46 P.3d at 434 (cleaned up). Arizona law also

recognizes that "a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 435. Additionally, "[w]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166 (1976) (citation omitted*); see also Sutter Home Winery, Inc. v. Vintage Selections, Ltd*., 971 F.2d 401, 408–09 (9th Cir. 1992).  But, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of her contractual bargain." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (citing *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 355, 732 P.2d 579 (Ariz. Ct. App. 1986) (stating that when a plaintiff does not obtain the benefit of its bargain, she is "free to pursue a claim for unjust enrichment")).

The Court has already decided that the IC Plans are contracts.  *See supra* Discussion III(A). Defendant's main disagreement with the contract alternative claims is that they cannot go forward without a valid contract forming the basis of these other claims.  (Doc. 23 at 8). However, having found that the IC Plans are valid contracts, that cannot be the proper basis for dismissal.  Besides, Arizona law allows Plaintiff to plead unjust enrichment, in the alternative, and even the existence of a contract does not invalidate an unjust enrichment claim.  *See Adelman* 90 F. Supp. at 1045 (citing *USLife Title Co. of Arizona*, 732 P.2d at 579 (stating that when a plaintiff does not obtain the benefit of its bargain, she is "free to pursue a claim for unjust enrichment")).  However, Defendant is correct that Plaintiff cannot base a claim for good faith and fair dealing on "[T]he breach of an express contractual term . . . ." (*Id.* at 13).  This is because the sole remedy available to Plaintiff is for the breach of the contract, not breach of contract

damages coupled with the breach of good faith and fair dealing.³ *See Fasso v. Cent. Freight Lines, Inc.*, No. CV-08-2046-PHX-ROS, 2010 WL 11512367, at *3 (D. Ariz. Jan. 5, 2010) (citing *Aspect Sys., Inc. v. Lam Research Corp.*, 2006 WL 2683642 (D. Ariz. 2006) (holding breach of a contractual term does not support a claim for breach of the covenant of good faith and fair dealing). Here, the very terms of the IC Plans were breached. The IC Plans outlined what Plaintiff had to do to earn his commissions. (Doc. 12-1). They list not only how Plaintiff could earn commission, but how much commission he would earn based on revenue target thresholds and new sales. (*Id.*) When Defendant failed to pay Plaintiff his commissions, as he alleges, Defendant breached the terms of the IC Plans. And the Court has already decided that the IC Plans were contracts. This outcome is of course immaterial to the unjust enrichment claim, which can proceed along with the breach of contract claim, if there is ultimately only recovery under one. *Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011) (citing *Trustmark Ins. Co. v. Bank One*, 48 P.3d 485, 492–93 (Ariz. Ct. App. 2002)). Therefore, the Court finds that Defendant's motion to dismiss will be granted on the fair dealing and good faith claim, but not on the unjust enrichment claim.

**IV.     Leave to Amend**

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)). Leave to

---

³ This reading is supported by Arizona law limiting the remedy available for breaching the implied covenant to contract damages. When no special relationship exists between the parties (e.g. fiduciary relationship), "the remedy for breach of this implied covenant is ordinarily by action on the contract." *Burkons v. Ticor Title Ins. Co. of Calif.*, 813 P.2d 710, 720 (Ariz. 1991). Plaintiff has not alleged a special relationship between the parties.

- 11 -

amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture C*o., 806 F.2d 1393, 1401 (9th Cir. 1986).  In sum, leave to amend "is properly denied [where] amendment would be futile."  *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

The Court will not grant Plaintiff leave to amend his Complaint here as the breach of the duty of good faith and fair dealing claim is barred as a matter of law.  *See Fasso*, 2010 WL 11512367, at *3.  Thus, any amendment to his claim would be futile and amendment is therefore properly denied.  *See Carrico*, 656 F.3d at 1008.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 13) is **GRANTED** in part and **DENIED** in part.  Plaintiff's Fifth Claim for breach of good faith and fair dealing will be **DISMISSED** with prejudice.  All of Plaintiff's other claims survive.

Dated this 10th day of June, 2025.

_____
Honorable Diane J. Humetewa
United States District Judge